UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
AT LAW AND IN ADMIRALTY

---

UNITED STATES OF AMERICA,

    Plaintiff,

    v.    Case No.

APPROXIMATELY $177,566.32 IN UNITED
STATES CURRENCY FROM U.S. BANK
ACCOUNT ENDING IN 6229,

    Defendant.

---

**VERIFIED COMPLAINT FOR CIVIL FORFEITURE IN REM**

---

The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Scott J. Campbell, Assistant United States Attorney for this district, alleges the following in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

**Nature of the Action**

1. This is a civil action to forfeit property to the United States of America for violations of Title 18, United States Code, Section 1343.

**The Defendant In Rem**

2. On or about February 6, 2018, the defendant property, approximately $177,566.32 in United States currency, was seized from U.S. Bank account ending in 6229, held in the name of Qicbid LLC, in Milwaukee, Wisconsin.

3. The Federal Bureau of Investigation seized the defendant property pursuant to an initial seizure warrant (18-M-5) that United States Magistrate Judge David E. Jones issued on

February 6, 2018, as well as a follow-up warrant (18-M-17) that Judge Jones issued on February 8, 2018.

4. The defendant property is presently in the custody of the United States Marshals Service in Milwaukee, Wisconsin.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

6. This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b).

7. Venue is proper in this judicial district under 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred, at least in part, in this district.

## Basis for Forfeiture

8. The defendant property is subject to forfeiture under Title 18, United States Code, Sections 981(a)(1)(C) and 984, because it constitutes or was derived from proceeds traceable to an offense constituting "specified unlawful activity" – as that term is defined in Title 18, United States Code, Section 1956(c)(7), with reference to Title 18, United States Code, Section 1961(1) – namely, wire fraud, committed in violation of Title 18, United States Code, Section 1343.

## Facts

9. At all material times, Nicholas Schaetzel owned and operated Qicbid LLC, an auction company.

10. Qicbid LLC ("Qicbid") was organized in March 2014. Qicbid is registered with the Wisconsin Department of Financial Institutions, with which Qicbid has listed its principal office address as 1XX Depot Road, Theresa, Wisconsin.

11. Beginning in or before March 2017, Nicholas Schaetzel and Qicbid knowingly devised and executed a scheme to defraud one of Qicbid's clients, Newtek Small Business Finance LLC ("Newtek"), in connection with an auction of trucks and related equipment that Qicbid agreed to conduct, and did conduct, on behalf of Newtek.

12. As a part of that scheme to defraud, Schaetzel knowingly made false statements of material fact to Newtek, with intent to defraud Newtek, regarding his and Qicbid's intent to distribute to Newtek the full amount of the auction proceeds that Schaetzel and Qicbid were contractually obligated to pay Newtek.

13. For the purpose of carrying out the scheme, Schaetzel also caused interstate wire communications to be made in furtherance of the scheme.

14. Specifically, following Qicbid's conduct of an auction of items belonging to Newtek, Schaetzel sent lulling email messages to Newtek. Those emails advised Newtek that Schaetzel intended to promptly pay Newtek the full amount of auction proceeds that Schaetzel and Qicbid owed Newtek.

15. But, in fact, when Schaetzel sent those email messages to Newtek, Schaetzel intended to convert some or all the money he owed Newtek to his own use and to the use of Qicbid.

16. The lulling emails furthered the fraud scheme in that they lulled Newtek into refraining from taking prompt action to recover the amounts that Schaetzel and Qicbid owed

Newtek. Those lulling emails thereby afforded Schaetzel additional time to convert funds that Schaetzel and Qicbid owed Newtek.

**Qicbid LLC's contract with Newtek Small Business Finance LLC**

17. On March 7, 2017, Qicbid entered into a contract with Newtek for the purposes of conducting an online auction of certain trucks, vans, flatbed trailers, and related equipment ("the Contract"). The auction was posted on Qicbid's website as "Olson's Trucking No Reserve Online Auction" ("Olson's Trucking Auction").

18. As reflected in the Contract, Qicbid is based in Theresa, Wisconsin.

19. As reflected in the Contract, Newtek is headquartered in New York, New York.

20. According to the terms of the Contract, Qicbid agreed to sell the equipment for Newtek, to receive payment for the sale of the items, and to pay Newtek its contractual share of the auction proceeds within 30 days of the completion of the auction.

21. Under the Contract, Newtek agreed to pay Qicbid a 15% commission on the gross sales for Qicbid's services. In addition, the Contract provided that Qicbid was entitled to collect and retain an 18% Buyer's Fee from all buyers, and the Buyer's Fee was not to be included in the gross sales. Paragraph 5 of the Contract specifically required Qicbid to retain the portion of the sales proceeds due Newtek:

> All monies received shall be received and retained by QB [Qicbid] to be applied as follows: First to cover the Buyer's Fees; Then to cover the Sales Commission on the Sale's gross; and, then expenses documented and approved. Thereafter, all remaining monies will be paid to Consigner [Newtek], within 30 business days following completion of the Sale. QB shall furnish Consigner with a final accounting of the all [sic] proceeds actually received from the Sale of Consigner's items, which shall include a list of all such assets sold per item and the final sales price.

**Olson's Trucking Auction for Newtek hosted by Qicbid**

22. Olson's Trucking Auction for Newtek, hosted by Qicbid, began on May 23, 2017, and closed on June 15, 2017. During that time, Qicbid sold all but two of the items it had listed at auction for Newtek.

23. As of June 15, 2017, at the close of Olson's Trucking Auction, the only two Newtek-owned items that had not been sold were a 1991 Peterbilt 379 Truck Trailer and a 2007 Wabash cube trailer.

24. But on July 21, 2017, Truck World purchased Newtek's 1991 Peterbilt 379 Truck Trailer and paid those proceeds to Qicbid.

**Records for U.S. Bank #6229**

25. U.S. Bank account ending in #6229 ("U.S. Bank #6229") was opened on March 7, 2016, in the name of Qicbid LLC, with an address of 6XX Clare Lane, Hartford, Wisconsin. The mailing address for the account was then changed and, at the time of the auction, was listed as 1XX Depot Road, Theresa, Wisconsin.

26. The sole signatory for U.S. Bank #6229 is Nicholas Schaetzel.

27. Before starting the Olson's Trucking Auction that Qicbid had agreed to conduct for Newtek, Qicbid had less than $25 in U.S. Bank #6229. Specifically, on May 31, 2017, U.S. Bank #6229 had an end-of-month balance of $24.02.

28. In fact, overdraft fees were charged to U.S. Bank #6229 on June 5, 2017; June 9, 2017; and June 12, 2017.

29. On June 16, 2017, U.S. Bank #6229 received the first deposits from the sale of the items that Qicbid had auctioned for Newtek.

    A. On June 16, 2017, Peterson Motors Company paid $45,425 by wire transfer to U.S. Bank #6229 for the purchase of Newtek equipment.

B. On June 16, 2017, Truck World paid $242,500 by wire transfer to U.S. Bank #6229 for the following Newtek equipment:

   i. 2001 Kenworth W900L
   ii. 1999 Freightliner FLD132
   iii. 2001 Freightliner Columbia 120
   iv. 2000 Peterbilt 379 Truck
   v. 1994 Peterbilt 379 Truck Tractor
   vi. 1996 Peterbilt 379 Truck Tractor
   vii. 2000 Ravens 12501183 Flatbed Trailer
   viii. 2014 Fontaine LX140 Renegade Detach
   ix. 2003 Chaparral Drop Deck Trailer
   x. 1997 Kenworth W900L Truck Trailer
   xi. 2003 Freightliner Century ST112
   xii. 2003 Peterbilt 379 Truck Tractor
   xiii. 2007 Chaparral Flatbed Trailer
   xiv. 2005 Peterbilt 357 Dump Truck
   xv. 2007 Sterling L9500 Dump Truck
   xvi. 1996 Peterbilt 379 Truck Tractor

30. On June 19, 2017, eight checks, totaling $138,575, were deposited into U.S. Bank #6229 from the following individual customers, identified by initials or company names, who had purchased items during Qicbid's auction for Newtek:

|   | Amount Paid | Customer |
|---|---|---|
| 1. | $4,830.00 | R.F. for a 2000 Raven Trailer |
| 2. | $8337.50 | D.S. |
| 3. | $14,662.50 | Lauer Farms, Inc. for a 2007 Fontaine drop deck trailer |
| 4. | $5,175.00 | R.B. |
| 5. | $41,400.00 | K.D. |
| 6. | $11,960.00 | J.P. |
| 7. | $32,775.00 | A.A. |
| 8. | $19,435.00 | Thompson Machinery Moving for a 1993 Transcraft Flatbed Trailer and a 2005 Peterbilt 379 Truck Tractor |
|   | **$138,575.00** | **TOTAL** |

6

31. On June 20, 2017, two checks, totaling $16,617.50, were deposited into U.S. Bank #6229 from the following customers who had purchased items during Qicbid's auction for Newtek:

|   | Amount Paid | Customer |
|---|---|---|
| 1. | $14,662.50 | K.A. for two 2000 Benson Trailers |
| 2. | $1,955.00 | Runde Metal for a Wasbash Duraplate Dry Van Trailer |
|   | **$16,617.50** | **TOTAL** |

32. On June 21, 2017, one check, in the amount of $44,275, was deposited into U.S. Bank #6229 from customer C. Kuehn Trucking, Inc. for the purchase of a 2004 SpecTec Open Top Refuse Trailer and a 2005 Manac Walking Floor Trailer during Qicbid's auction for Newtek.

33. On June 23, 2017, three checks, totaling $39,000, were deposited into U.S. Bank #6229 from the following customers who had purchased items during Qicbid's auction for Newtek:

|   | Amount Paid | Customer |
|---|---|---|
| 1. | $20,945.00 | Tampa Trucking Group Inc. |
| 2. | $8,625.00 | M.S. |
| 3. | $9,430.00 | A.J. and J.J. |
|   | **$39,000.00** | **TOTAL** |

34. As of June 30, 2017, after Qicbid had conducted the auction for Newtek and most of the auction proceeds had been deposited into U.S. Bank #6229, the end of the month balance in that account was $543,073.50.

35. On July 21, 2017, one additional check in the amount of $6,000 was deposited into U.S. Bank #6229 from customer Truck World for the purchase of the 1991 Peterbilt 379 Truck Trailer during Qicbid's auction for Newtek, as referenced in paragraph 24.

36. Between June 16, 2017, and July 21, 2017, U.S. Bank #6229 received a total of approximately $532,392.50, via wire transfers and deposited checks, as proceeds from the sale of Newtek's items during Qicbid's auction.

**Statements made by Nicholas Schaetzel, the owner of Qicbid**

37. Bidding on the Olson's Trucking Auction that Qicbid hosted for Newtek ended on or about June 15, 2017.

38. According to the terms of the Contract, Qicbid was obligated to retain the portion of the sales proceeds due Newtek and then to pay those proceeds due Newtek within 30 business days of the completion of the auction sale.

39. On July 7, 2017, an individual with the initials G.P., who is the Vice President of Asset Management for Newtek, sent an email to Nicholas Schaetzel requesting a status update on the auction results and an issuance of the auction proceeds.

40. On July 10, 2017, Schaetzel replied to G.P.'s July 7 email by stating, in essence, that "Cheryl" was working on it. "Cheryl" is an individual with the initials C.K., whom Schaetzel had listed as his Administrative Assistant.

41. On July 14, 2017, G.P. sent Schaetzel two more email messages.

    A. In one email, G.P. asked Schaetzel about the status of finalizing the auction results and issuing the auction proceeds.

    B. In a second email, G.P. asked Schaetzel about the processing of the titles for the trucks.

42. Schaetzel replied by email to G.P.'s July 14 emails by stating, in essence, that they still had one customer to collect payment from and that they were still in process of transferring titles.

8

43. On July 19, 2017, G.P. asked Schaetzel, by email, if the Peterbilt truck trailer was still on the auction site. Schaetzel confirmed that it was still on the auction site along with the 2007 Wabash cube trailer.

44. On July 20, 2017, G.P. sent an email to Schaetzel asking if $2,700 was the best offer for the 2007 Wabash cube trailer. Schaetzel replied that he would check with "him."

45. On July 24, 2017, G.P. emailed Schaetzel and asked for the projected time of remittance.

46. On July 25, 2017, Schaetzel replied by email to G.P.'s July 24 email stating that "Cheryl" had been off and he would check with her once she returned.

47. On August 11, 2017, Schaetzel wrote to G.P. stating: "Cheryl has been working on the settlement and the title issues. As soon as I get in contact with her I will give you an update as to when the settlement and proceeds will be sent off."

48. G.P. sent emails to Schaetzel on August 14, 2017; August 17, 2017; and August 18, 2017.

49. G.P.'s August 2017 email messages to Schaetzel included the following:

    A.    On August 14, 2017, G.P. sent an email to Schaetzel stating that she had left a message on both his cell phone and office phone voice mail systems.

    B.    On August 25, 2017, G.P. sent an email to Schaetzel requesting that he attend to her concerns as soon as possible. G.P. also stated that they were still waiting for the auction reports and accounting, which Schaetzel had promised for that day.

    C.    On August 28, 29 and 30, 2017, G.P. sent emails to Schaetzel stating that she had left messages on his business line and attempted to reach him via his cell phone, which was no longer accepting messages.

50. Schaetzel never responded to any of G.P.'s emails referenced in paragraphs 48 and 49. In fact, Schaetzel never responded to any of G.P.'s email messages after August 11, 2017.

51. In addition to email correspondence, G.P. also tried to telephone Schaetzel several times between on or about August 14 and August 30, 2017.

52. On September 15, 2017, a legal representative acting on behalf of Newtek sent a certified letter to seven addresses associated with Nicholas Schaetzel. All of the letters were returned with the exception of the letter sent to 1XX Depot Road, Theresa, Wisconsin, which was signed for by "M. Schaetzel."

53. Nicholas Schaetzel did not respond to that September 15, 2017 letter.

54. In fact, after August 11, 2017, Nicholas Schaetzel did not respond to any messages that Newtek had left for him.

55. As of July 20, 2018, Newtek has received none of the auction proceeds that Qicbid and Schaetzel were obligated to pay Newtek under the Contract.

**Nicholas Schaetzel's August 11, 2017 post-auction lulling email message to Newtek, which Schaetzel sent before and after he had spent auction proceeds that Qicbid and he were obligated to retain for, and to repay to, Newtek**

56. Between June 16, 2017, and July 21, 2017, Schaetzel received approximately $532,392.50 in total gross proceeds from Qicbid's auction of Newtek's items. Schaetzel received all those proceeds in the U.S. Bank #6229 account, which Schaetzel solely controlled.

57. Under paragraph 4 of the Contract, Qicbid was entitled to collect and retain an 18% Buyer's Fee from all Buyers, and the Buyer's Fee was not to be included in the calculation of gross sales.

10

58. Under paragraph 5 of the Contract, Newtek agreed to pay Qicbid a sales commission of 15% of the gross sales amount, excluding the Buyer's Fee.

59. After subtracting the 18% Buyer's Fee ($95,830.65) and the 15% commission ($65,484.28) from the $532,392.50 in deposits, the amount due to Newtek under the Contract was approximately $371,077.57, and the amount Qicbid was entitled to retain was approximately $161,314.93.

60. Thus, under the Contract, Qicbid was obligated to pay Newtek approximately $371,077.57 within 30 days of the completion of the auction, and Qicbid was entitled to retain approximately $161,314.93.

61. Because the auction ended on or about June 15, 2017, Qicbid was obligated to pay Newtek the $371,077.57 on or before July 15, 2017.

62. But after Schaetzel and Qicbid had received the $532,392.50 in total gross auction proceeds from Qicbid's auction of Newtek's items – and after Qibid's payment of the $371,077.57 in auction proceeds was already past due – Schaetzel engaged in a scheme to defraud Newtek.

63. As a part of that scheme, Schaetzel made false statements of material fact for the purpose of defrauding Newtek and lulling Newtek into believing that Schaetzel would pay Newtek the full amount that Qicbid and Schaetzel owed Newtek under the Contract. But, in fact, when Schaetzel made those statements:

    A. Schaetzel had already converted a substantial portion of the funds that Qicbid owed Newtek to his own use, and

    B. Schaetzel then intended to convert even more of those funds that Qicbid owed Newtek to his own use.

11

64. Schaetzel sent Newtek emails indicating that he and Qicbid would soon be paying Newtek the amount Newtek was owed when, in fact, Schaetzel was not in a position to make that full payment.

65. That was because, at the time he had sent those messages, Schaetzel and Qicbid had already expended sums from U.S. Bank #6229, consisting of proceeds of the Newtek auction, that exceeded the $161,314.93 in combined Buyer's Fee and commissions that Qicbid was entitled to retain from the auction proceeds.

66. Because substantially all the money in U.S. Bank #6229, at that time, consisted of the proceeds from the auction Qicbid had conducted for Newtek, by spending more than Schaetzel and Qicbid were entitled to retain under the Contract, Schaetzel had expended a material amount of the $371,077.57 that he and Qicbid owed Newtek under the Contract.

67. For example, in response to G.P.'s August 11, 2017 email message, Schaetzel advised G.P. by email of that same date: "Cheryl has been working on the settlement and the title issues. As soon as I get in contact with her I will give you an update as to when the settlement and proceeds will be sent off."

68. But Schaetzel was in no position to make full payment because by August 11, 2017, Schaetzel had already expended $179,500 from U.S. Bank #6229.

> A. Two checks were written from U.S. Bank #6229 to C.K. ("Cheryl") – one on June 23, 2017, in the amount of $4,000, and the other on July 27, 2017, in the amount of $500.
>
> B. On July 24, 2017, a wire debit was made from U.S. Bank #6229 to King Kullen Grocery in the amount of $175,000.

69. Because substantially all the funds in U.S. Bank #6229 then consisted of proceeds of Qicbid's auction of Newtek's items, after Schaetzel made the expenditures identified in paragraph 68, he could no longer pay the full amount of settlement proceeds Qicbid then owed

12

Newtek – contrary to Schaetzel's indication in his August 11, 2017 message that Qicbid could and would soon do so.

70. Schaetzel's subsequent conversion of additional auction proceeds owed Newtek strongly indicate that, as of August 11, 2017, Schaetzel did not intend to make full payment to Newtek.

71. On November 3, 2017, a deposit in the amount of $250,000 was put into U.S. Bank #6229 from "Best Yet Market." Immediately prior to that deposit, the balance in U.S. Bank #6229 was $211,255.76. This deposit is unrelated to the funds the account received from the proceeds of the auction for Newtek.

72. Nevertheless, despite the new deposit, Schaetzel did not pay Newtek any of the money that he owed Newtek.

73. Instead, Schaetzel made payments to himself or for his own use, including the following:

    A. On November 13, 2017, a check from U.S. Bank #6229 was issued to Schaetzel in the amount of $30,000.

    B. On November 17, 2017, a check from U.S. Bank #6229 was issued to King Kullen Grocery in the amount of $50,000.

    C. On November 20, 2017, Schaetzel made a counter withdrawal from U.S. Bank #6229 in the amount of $30,000.

74. As of July 20, 2018, Schaetzel has paid no money to Newtek for the proceeds of the auction that Qicbid hosted to sell Newtek's equipment.

75. Schaetzel devised and executed a scheme to defraud Newtek involving the use of interstate wirings.

76. Schaetzel executed that scheme by, among other things, sending email messages to Newtek in which Schaetzel falsely stated, and falsely implied, with intent to defraud Newtek,

13

that Qicbid had retained the auction proceeds due Newtek and that Schaetzel would cause Qicbid to promptly pay those proceeds to Newtek.

77. When Schaetzel sent those email messages – and particularly, his August 11, 2017 email to G.P. of Newtek – Schaetzel knew that Qicbid could no longer pay in full what Qicbid owed Newtek because Schaetzel had by then already begun spending the portion of the auction sales proceeds due Newtek. Schaetzel also knew that he lacked additional funds in the account that he could use to pay Newtek the full amount Qicbid owed Newtek.

78. At least as of August 11, 2017, when Schaetzel sent his email message of that date to Newtek, and in view of Schaetzel's pattern of subsequent behavior, Schaetzel did not intend to pay Newtek any substantial portion of the sales proceeds.

79. After Schaetzel sent his August 11, 2017 email message to Newtek that stated, or at least plainly implied, that Qicbid had retained and would soon pay Newtek, Schaetzel instead:

  A. Stopped responding to Newtek inquiries;

  B. Spent $110,000 of funds owed Newtek during November 2017, despite having received a $250,000 deposit from another source that would have allowed him to pay Newtek;

  C. Apparently expended or transferred additional funds owed Newtek since then, given that the balance in U.S. Bank #6229, as of Friday, February 2, 2018, was only $155,725.93 – an account balance fully $215,351.64 less than the $371,077.57 amount Qicbid was required to retain and to pay to Newtek; and

  D. As of July 20, 2018, has not caused Qicbid to pay Newtek even a dime of the auction proceeds.

80. Schaetzel's false statement in his August 11, 2017 email to G.P. of Newtek – to the effect that he would soon give "an update as to when the settlement and proceeds will be sent off" – was material in that it could have had the effect on Newtek, and apparently and understandably did have the effect, of lulling Newtek into refraining, for months, from taking

14

affirmative steps to recover the auction proceeds due to Newtek from accounts controlled by Qicbid, Schaetzel, or both.

## Warrant for Arrest In Rem

81. Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the defendant property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

## Claim for Relief

82. The plaintiff repeats and incorporates by reference the paragraphs above.

83. By the foregoing and other acts, the defendant property constitutes or was derived from proceeds traceable to specified unlawful activity, namely, wire fraud, committed in violation of Title 18, United States Code, Section 1343, and is therefore subject to forfeiture to the United States of America under Title 18, United States Code, Sections 981(a)(1)(C) and 984, with cross-references to Title 18, United States Code, Sections 1956(c)(7) and 1961(1).

WHEREFORE, the United States of America prays that a warrant of arrest for the defendant property, approximately $177,566.32 in United States currency from U.S. Bank account ending in 6229, be issued; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that judgment declare the defendant property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and equitable, together with the costs and disbursements of this action.

15

Case 2:18-cv-01195-NJ   Filed 08/03/18   Page 15 of 17   Document 1

Dated at Milwaukee, Wisconsin, this 3rd day of August, 2018.

>Respectfully submitted,
>
>MATTHEW D. KRUEGER
>United States Attorney
>
>By:
>
> s/SCOTT J. CAMPBELL
>SCOTT J. CAMPBELL
>Assistant United States Attorney
>Scott J. Campbell Bar Number: 1017721
>Attorney for Plaintiff
>Office of the United States Attorney
>Eastern District of Wisconsin
>517 East Wisconsin Avenue, Room 530
>Milwaukee, Wisconsin 53202
>Telephone: (414) 297-1700
>Fax: (414) 297-1738
>E-Mail: scott.campbell@usdoj.gov

## Verification

I, Jill Dring, hereby verify and declare under penalty of perjury that I am a Special Agent with the Federal Bureau of Investigation ("FBI"), that I have read the foregoing Verified Complaint for Civil Forfeiture *in rem* and know the contents thereof, and that the factual matters contained in paragraphs 9 through 80 of the Verified Complaint are true to my own knowledge.

The sources of my knowledge are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent with the FBI.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.


Date: 7/25/2018            s/JILL DRING
                                                            Jill Dring
                                                            Special Agent
                                                            Federal Bureau of Investigation

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

Place an "X" in the appropriate box: ☐ Green Bay Division ☒ Milwaukee Division

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Scott J. Campbell, AUSA
US Attorney's Office, #530 Federal Building
517 E. Wisconsin Avenue, Milwaukee, WI 53202 (414-297-1700)

## DEFENDANTS
APPROXIMATELY $177,566.32 IN UNITED STATES CURRENCY FROM U.S. BANK ACCOUNT ENDING IN 6229

County of Residence of First Listed Defendant  Milwaukee
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question *(U.S. Government Not a Party)*
☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☒ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 USC §§ 981(a)(1)(C) and 984
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 08/03/2018
SIGNATURE OF ATTORNEY OF RECORD: s/SCOTT J. CAMPBELL

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

Case 2:18-cv-01195-NJ   Filed 08/03/18   Page 1 of 1   Document 1-1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
AT LAW AND IN ADMIRALTY

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                              Case No.

APPROXIMATELY $177,566.32 IN UNITED
STATES CURRENCY FROM U.S. BANK
ACCOUNT ENDING IN 6229,

      Defendant.

## WARRANT FOR ARREST IN REM

To:    THE UNITED STATES MARSHAL
          Eastern District of Wisconsin

WHEREAS, a Verified Complaint for Civil Forfeiture *in rem* was filed on the 3rd day of July, 2018, by the United States Attorney for the Eastern District of Wisconsin, which seeks the forfeiture of the above-named defendant property pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 984, including cross-references to Title 18, United States Code, Sections 1956(c)(7) and 1961(1), and which prays that process issue to enforce the forfeiture and to give notice to all interested parties to appear before the court and show cause why the forfeiture should not be decreed; and due proceedings being had, that the defendant property be condemned and forfeited to the use of the United States of America.

YOU ARE THEREFORE HEREBY COMMANDED to attach and arrest the defendant property, approximately $177,566.32 in United States currency from U.S. Bank account ending in 6229 held in the name of Qicbid LLC, which was seized on or about February 6, 2018, and is

presently in the custody of the United States Marshal Service in Milwaukee, Wisconsin, in the Eastern District of Wisconsin, and to detain the same until further order of this Court.

Dated this ____ day of August, 2018, at Milwaukee, Wisconsin.

                         STEPHEN C. DRIES
                         Clerk of Court

          By: _____
                      Deputy Clerk

**<u>Return</u>**

This warrant was received and executed with the arrest of the above-named defendant.

Date warrant received: _____

Date warrant executed: _____

Name and title of arresting officer: _____

Signature of arresting officer: _____

Date: _____